Matthew G. Monforton, Montana Bar # 5245
Monforton Law Offices, PLLC
32 Kelly Court
Bozeman, Montana 59718
Telephone: (406) 570-2949
Email: matthewmonforton@yahoo.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| ANDERSON TOWING, LLC, a Montana limited liability company, | ) ) Cause No. _____ |
| Plaintiff, | ) ) **COMPLAINT** |
| v. | ) ) |
| RICH ST. JOHN, in both his individual capacity and his official capacity as Chief of Police for the City of Billings, | ) ) ) |
| Defendant. | ) ) ) |

COMES NOW Plaintiff Anderson Towing, LLC, by and through its

undersigned counsel, and for its Complaint against Defendant states as follows

### I. INTRODUCTION

1.    Plaintiff Anderson Towing, LLC, brings this action to challenge an

unlawful and unconstitutional scheme orchestrated by a retired judge and enforced

by the Billings Police Department (BPD).  As captured in video evidence, the

judge quite literally played the "judge card" in attempting to pressure Anderson

Towing into making exceptions for him that are unavailable to other customers.

When that failed, he leveraged his close ties with BPD leadership to exact revenge.

BPD complied by permanently removing Anderson Towing from its local tow

rotation list—without notice, hearing, or due process. This punitive action amounts

to a corporate death sentence, threatening layoffs and the destruction of the

business. Anderson Towing seeks to hold Defendants accountable for this abuse of

power and restore its rightful place in the BPD's rotation system.

## JURISDICTION AND VENUE

2.      This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331,

1343, and 42 U.S.C. § 1983, as well as the Fourteenth Amendment to the United

States Constitution.

3.      Venue is proper in the Billings Division of this Court because a

substantial part of the events giving rise to the claims occurred in Yellowstone

County, Montana. L.R. 3.2(b).

## PARTIES

4.      Plaintiff Anderson Towing, LLC, is a limited liability company with

its principal place of business located in Yellowstone County, Montana.

5.     Defendant Rich St. John is the Chief of Police for the City of Billings, Montana. Upon information and belief, Defendant St. John resides in Yellowstone County, Montana, and is sued in his individual and official capacities.

## STATEMENT OF FACTS

### A.    Anderson's Property Interest in the Billings Tow Rotation List

6.     In 1995, the Montana Legislature enacted a comprehensive statutory framework to regulate towing rotation lists maintained by both the Montana Highway Patrol (MHP) and local law enforcement agencies.

7.     The Montana Department of Transportation (MDT) is required to "establish and maintain an *equitable* rotation system among qualified tow truck operators that apply to the department in writing to be placed on the system and receive a letter of appointment under 61-8-920." Mont. Code Ann. § 61-8-908(1) (emphasis added).

8.     Absent limited, enumerated exceptions, "the law enforcement officer at the scene of the wreck shall call the qualified tow truck operator that is next on the rotation list…." Mont. Code Ann. § 61-8-908(6).

9.     Local law enforcement agencies, such as BPD, "may adopt and administer a local law enforcement rotation system that complies with the provisions of this part." Mont. Code Ann. § 61-8-908(9).

3

10.     Complaints regarding the rotation system "must be referred in writing to the complaint resolution committee established in 61-8-912." Mont. Code Ann. § 61-8-908(11).

11.     Members of the Tow Truck Complaint Resolution Committee ("Tow Truck Committee") are appointed by the Attorney General, MDT is tasked with promulgating rules governing the Tow Truck Committee's complaint resolution procedures. Mont. Code Ann. § 61-8-912.

12.     Pursuant to Mont. Code Ann. § 61-8-912, MDT has enacted several safeguards to protect the due process rights of tow truck companies subject to complaints brought before the Tow Truck Committee. Mont. Admin. R. 23.6.106.

13.     Since 2018, Anderson Towing has complied with the requirements established in Title 61, Chapter 8, Part 9 of the Montana Code Annotated and has been listed on both MHP and BPD towing rotation lists.

14.     On October 21, 2024, the Tow Truck Committee suspended Anderson Towing from the MHP rotation list for a six-month period, effective from November 1, 2024, through April 30, 2025.

15.     The suspension was based on allegations of price gouging by Anderson Towing during an incident in Gallatin County, Montana, in April 2024.

16.     One of the committee members who participated in the suspension of Anderson Towing was Joanne Blyton, the manager and owner of Billings Towing and Recovery—a direct competitor of Anderson Towing.

17.     Blyton voted to sanction Anderson Towing even though Anderson Towing presented to the Tow Truck Committee a bill from Blyton's company for a comparable tow that was *higher* than the Anderson Towing bill at issue.

18.     Anderson Towing vigorously denies the validity of the Tow Truck Committee's determination.

19.     On October 22, 2024, MHP Sergeant Tammy Perkins, the chair of the Tow Truck Committee, sent an email to MHP troopers statewide informing them of Anderson Towing's suspension. **Exhibit 1**.

20.     In that same notice, Sergeant Perkins stated that "If the local rotation takes them off as they see fit, that is their choice and determination to make at the local level, per legal advice."

21.     Following this communication, the BPD suspended Anderson Towing from its local towing rotation list for a two-week period beginning November 1, 2024, and bypassed the company for rotation calls. BPD reinstated Anderson Towing to its rotation list on November 14, 2024.

**B.    Anderson Towing's Suspension from the Billings Towing Rotation List Without Notice or a Hearing**

22.    Joel Slade, a former BPD Assistant Chief, and Officer Jay Berry have participated in annual horseback hunting trips with Judge Russ Fagg, a retired local judge, for several years.

23.    On February, 8, 2025, at approximately 12:29 p.m., Anderson Towing received a call from BPD regarding a traffic accident involving a Mercedes Benz E-Class Sedan at the intersection of 6th Avenue North and North 27th Street.



24.    An Anderson Towing operator arrived at the scene at 12:36 p.m., loaded the Mercedes onto his truck, and cleared the scene at 12:48 p.m.

25.    Two days later, on Monday, February 10, 2025, Judge Fagg arrived at Anderson Towing's office to retrieve the Mercedes.

26.    At 10:19 a.m. that morning, Denise Jett, a representative of Anderson

Towing, informed Judge Fagg that Anderson Towing only accepted cash or a

cashier's check for payment.  Judge Fagg responded with vulgar language:

| | |
|---|---|
| Ms. Jett: | I have to have cash or a cashier's check only from the bank. They will not accept anything else. |
| Judge Fagg: | That's kinda bullshit that you didn't tell me that half an hour ago. |
| Ms. Jett: | Sir, I didn't speak to you. So please don't cuss at me. . . |
| Judge Fagg: | Well. . . |
| Ms. Jett: | . . . Please do not cuss at me. . . . |
| Judge Fagg: | Tell the guy who answers the phone. I told him I'm coming up… |
| Ms. Jett: | …You don't need to be rude to me… |
| Judge Fagg: | …You're gonna need. . . |
| Ms. Jett: | …."Excuse me, I can ask you to leave…. |
| Judge Fagg: | ….I have a credit card and a check…. |

27.    A true and correct video recording of this exchange can be found at:

youtu.be/XqiaiLwCbD8

28.     As Judge Fagg continued insisting on using a credit card or personal check, a visibly shaken Ms. Jett asked Bryce Saunders, Anderson Towing's general manager, to intervene.

29.     Mr. Saunders explained to Judge Fagg that Anderson Towing's policy of accepting only cash or cashier's checks was necessary because the company had "been burned so many times" when accepting credit cards or personal checks, and that this policy was designed to protect the company.

30.     Judge Fagg then turned to another person in the lobby and said that "This is a bunch of bullshit."

31.     Another Anderson Towing representative informed Judge Fagg that the registration in the Mercedes was expired.  Judge Fagg acknowledged that the vehicle was registered to his father in Arizona and admitted that it had likely not been renewed.

32.     Upon being informed that the vehicle could not be released without valid registration, Judge Fagg became agitated and asked, "What are the chances that someone else owns that vehicle?"

33.     The Anderson representative responded that the likelihood was "pretty high," which required the need for updated documentation to prevent the release of stolen vehicles or vehicles to unauthorized persons.

34.    Judge Fagg ultimately agreed to pay Anderson Towing a $100 fee to retrieve an updated registration directly from the Montana Motor Vehicle Department (MVD).

35.    Moments later, Ms. Jett presented Judge Fagg with the bill and informed him that that a $100 charge for the MVD report was listed as "Lien Processing Fee."

36.    Judge Fagg insisted on speaking with the owner of Anderson Towing.

37.    After reaching the wife of Anderson Towing's owner by phone, Judge Fagg made the following statement:

> "I hate to play this card – I was a district court judge for 22 years. I'm lawyer in this town. There's no damn way I'm going skip out on the bill.

38.    A true and correct video recording of this statement is available at youtu.be/ISOeEBjvvhc

39.    The owner's wife informed Judge Fagg that she could not make an exception to the company's policy.

40.    Judge Fagg left the office and obtained cash, then returned approximately 20 minutes later and berated Ms. Jett:

| Ms. Jett: | Is AAA still here or are they coming back? |
|---|---|
| Judge Fagg: | They're coming back. You've wasted enough of their time this morning. |

Ms. Jett:        Sir, I didn't waste anybody's time.

Judge Fagg:      Yeah - You didn't tell me about cash or a cashier's check.

41.     A true and correct video recording of this exchange can be found at: youtu.be/aX4J3o9_dJg

42.     Shortly thereafter, Judge Fagg began yelling over Ms. Jett and telling her that "I'm pissed off because nobody told me I needed cash or a cashier's check."

43.     A true and correct video recording of this statement can be found at: bit.ly/421RHbT

44.     Moments later, Judge Fagg reiterated, "What started this was when I walked in with a credit card and a checkbook, and then you tell me you don't take credit cards or checks."

45.     A true and correct video recording of this statement can be found at: youtube.com/watch?v=yfQz9LbpGTw

46.     On February 11, 2025, Judge Fagg filed a formal complaint against Anderson Towing with the Montana Office of Consumer Protection in Helena. A true and correct copy of that complaint is attached as **Exhibit 2**.

47.     Judge Fagg's complaint did not mention his credit card and personal check being rejected. Instead, he solely complained about the charges.

48.    On February 12, 2025, Judge Fagg sent a letter to the City of Billings requesting that Anderson Towing be removed from BPD's towing rotation list.

49.    The letter was written on letterhead referencing his status as a "22-year State Judge." A true and correct copy of this letter is attached as **Exhibit 3**.

50.    In this letter, Judge Fagg referenced a conversation he had with Shawn Mayo, the current Assistant Chief of BPD.

51.    On February 14, 2025, Bryce Saunders, the general manager for Anderson Towing, reviewed the invoice and determined that a $500 charge for traffic control devices had been included on the bill in error.

52.    Later that day, Mr. Saunders contacted Judge Fagg and offered to refund the $500. However, Judge Fagg refused the offer.

53.    Despite this, in a letter dated February 25, 2025, Chief of Police Rich St. John informed Anderson Towing that it had been "permanently removed from the Billings local tow truck rotation system." A true and correct copy of the letter is attached as **Exhibit 4**.

54.    The letter primarily referenced the Towing Committee's earlier order concerning the incident in Gallatin County in April 2024, despite the fact that BPD had already suspended Anderson Towing for that incident between November 1 and November 14, 2024, and subsequently reinstated the company.

11

55.    The letter also vaguely referenced "informal complaints" about Anderson Towing following local rotation calls but did not provide any details or documentation regarding these complaints.

56.    The BPD's letter also referenced an invoice from Anderson Towing related to Call #53354, the tow provided for the Mercedes on February 8, 2025, at the intersection of 6th Avenue North and North 27th Street.

57.    The invoice that Judge Fagg paid was derived from this same invoice marked as "Call #53354."

58.    Although the BPD letter did not mention Judge Fagg by name, the invoice attached to the letter was a copy of the one provided to him by Anderson Towing.

59.    BPD's letter took issue with the $100 lien processing fee and the $500 traffic control fee listed on the invoice.

60.    BPD concluded its letter by declaring:

> Anderson Towing is removed from the Billings local rotation system, effective the date of this letter.... This decision is permanent and will not be reconsidered for the reasons stated above, including a willful and consistent failure by Anderson Towing to treat Billings citizens in a fair and equitable manner consistent with recognized tow truck standards.

61.    Anderson Towing received no notice or hearing from BPD before this permanent suspension, in violation of the Due Process Clause of the Fourteenth Amendment.

62.    Had Anderson Towing been afforded notice and an opportunity to be heard, it would have presented the following evidence:

- Testimony from General Manager Bryce Saunders confirming that he reviewed the invoice, contacted Judge Fagg on or about February 14, 2025, and offered to refund the $500 for the traffic control fee;

- Testimony from Denise Jett (supported by video evidence) confirming that the $100 lien processing fee was for the cost of obtaining an MVD report due to the expired registration and ownership discrepancy, and that Judge Fagg agreed to this charge;

- Testimony from Rob Lehm, a retired law enforcement officer with MDT's Motor Carrier Services and Anderson Towing's Department of Transportation's Compliance Manager, confirming that the remaining charges on Judge Fagg's invoice were reasonable and below the industry standard once the erroneous traffic control device charge was removed.

63.    Nevertheless, BPD permanently suspended Anderson Towing without any notice or hearing, violating Anderson Towing's due process rights under the Fourteenth Amendment.

64.    Inclusion on BPD's towing rotation list is critical to Anderson Towing's business. Absent immediate relief from this Court, Anderson Towing

will suffer irreparable harm, including substantial financial losses that will result in layoffs at its Billings office.

## CAUSES OF ACTION

## COUNT I

### VIOLATION OF PLAINTIFF'S FOURTEENTH AMENDMENT RIGHT TO PROCEDURAL DUE PROCESS
### (42 U.S.C. § 1983)

65.     Plaintiff realleges and incorporates by reference all prior allegations as if fully set forth herein

66.     The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law."

67.     A procedural due process claim under the Fourteenth Amendment has two elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections. *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.,* 149 F.3d 971, 982 (9th Cir. 1998).

68.     The "root requirement" of the procedural due process is that "an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." *Boddie v. Connecticut*, 401 U.S. 371, 378-79 (1971) (emphasis in original); *Guenther v. Comm'r*, 889 F.2d 882, 884 (9th Cir. 1989)

("Notice and an opportunity to be heard are the hallmarks of procedural due process").

69.    Inclusion on a statutorily established towing rotation list creates a protected property interest. *Pritchett v. Alford*, 973 F.2d 307, 318 (4th Cir. 1992) ("the specific constitutional right asserted by [the plaintiffs] not to be removed summarily from the wrecker list was a clearly established right of which any reasonably competent official in Alford's position would have known."); *Abercrombie v. City of Catoosa*, 896 F.2d 1228, 1232 (10th Cir. 1990) (finding a property interest where state law mandated a rotation list and required equal referral opportunities).

70.    Anderson Towing has been included on BPD's towing rotation list since 2018 and, as a result, possesses a property interest in continued inclusion on that list.

71.    On or about February 25, 2025, Defendant Rich St. John removed Anderson Towing from BPD's towing rotation list without providing any notice or opportunity for a hearing.

72.    By summarily removing Anderson Towing without due process, Defendant violated Anderson Towing's rights under the Due Process Clause of the Fourteenth Amendment.

73.    As a direct and proximate result of Defendant's unconstitutional conduct, Anderson Towing has suffered, and continues to suffer, substantial harm.

74.    Anderson Towing is entitled to damages and injunctive relief, including an order requiring BPD to reinstate Anderson Towing to the towing rotation list and prohibiting BPD from bypassing Anderson Towing in future tow rotation calls.

## COUNT II

## VIOLATION OF PLAINTIFF'S PROCEDURAL DUE PROCESS RIGHTS UNDER THE MONTANA CONSTITUTION
### (Mont. Const. Art. II, § 17)

75.    Plaintiff realleges and incorporates by reference all prior allegations as if fully set forth herein.

76.    Article II, § 17 of the Montana Constitution provides that "[n]o person shall be deprived of life, liberty, or property without due process of law."

77.    The Montana Constitution's due process provision "mirrors the Due Process Clause of the Federal Constitution." *State v. Myran*, 289 P.3d 118, 123 (Mont. 2012).

78.    Defendant's removal of Anderson Towing from BPD's towing rotation list, without providing any notice or opportunity for a hearing, violates Anderson Towing's due process rights under the Montana Constitution.

79.     As a direct and proximate result of Defendant's unlawful actions, Anderson Towing has suffered, and continues to suffer, substantial financial harm.

80.     Anderson Towing is entitled to damages and injunctive relief, including an order requiring BPD to reinstate Anderson Towing to the towing rotation list and prohibiting BPD from bypassing Anderson Towing in future tow rotation calls.

## PRAYER

WHEREFORE, Anderson Towing respectfully requests that this Court grant the following relief:

A. Entry of judgment against Defendant for injunctive relief, including reinstatement to the BPD towing rotation list and a prohibition against bypassing Anderson Towing in future rotations;

B. An award of nominal, compensatory, and punitive damages as appropriate to redress Defendant's violations of Anderson Towing's constitutional rights;

C. An award of reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988 and other applicable law; and

D. Any other relief this Court deems just and proper.

DATED: March 26, 2025

Respectfully Submitted,

_____

Matthew G. Monforton
Monforton Law Offices, PLLC
32 Kelly Court
Bozeman, Montana 59718

Attorney for Plaintiff Anderson Towing, LLC

## REQUEST FOR JURY TRIAL

Plaintiffs hereby request a jury trial for all issues so triable.


DATED: March 26, 2025

Respectfully Submitted,

_____
Matthew G. Monforton
Monforton Law Offices, PLLC
32 Kelly Court
Bozeman, Montana 59718

Attorney for Plaintiff Anderson Towing, LLC