**From:** Perkins, Tammy <TPerkins@mt.gov>
**Sent:** Tuesday, October 22, 2024 4:40 PM
**To:** Sager, Kurt <KSager@mt.gov>; Hayter, Kyle <KHayter@mt.gov>; Barry, Chan <CBarry2@mt.gov>; Gilbert, Eric <EGilbert@mt.gov>; Samuelson, Douglas <DSamuelson@mt.gov>; Grover, Jason <JGrover@mt.gov>; Tuszynski, Jackie <JTuszynski@mt.gov>; Howey, Becka <Becky.Howey@mt.gov>; Powers, Autumn <AuPowers@mt.gov>; Reeves, Amanda <Amanda.Reeves@mt.gov>
**Cc:** Bunnis, Julie <JBunnis@mt.gov>; Griffith, Jacob <Jacob.Griffith2@mt.gov>
**Subject:** Anderson Towing LLC - Rotation Suspension

Please suspend all Anderson Towing Companies from Rotation per the attached 10-21-2024 Order from the Tow Truck Resolution Committee Judgement. Captains Gilbert and Samuelson, please notify the local ring down / county dispatch of the MHP suspension from rotation. If the local rotation takes them off as they see fit, that is their choice and determination to make at the local level, per legal advice.

The suspension from ROTATION (only) is to begin November 1, 2024, and end April 30, 2025. I will email included parties as the end date approaches as to the status of the reinstatement to Rotation towing.

Anderson Towing LLC

Anderson Towing 1

Anderson Towing 2

Anderson Towing 3

Anderson Towing 4

Anderson Towing 5

Anderson Towing 6

Anderson Towing 7

Anderson Towing 8

Anderson Towing 9

Anderson Towing 10

Anderson Towing 11

Anderson Towing 12

Anderson Towing Belgrade

Anderson Towing Bozeman

Anderson Towing Four Corners


Respectfully,

## Sergeant Tammy Perkins

MHP139

Records Management Supervisor

Tow Truck Administrator

Head Quarters

18 Trooper Drive, Boulder MT 59632

(406) 444-3280

(406) 498-7032

---


2024-10-21Final Order.pdf
187.8kB

## TOW TRUCK COMPLAINT RESOLUTION COMMITTEE

| | |
|---|---|
| IN THE MATTER OF: | ) Record No. 2448104 |
| KENYON NOBLE LUMBER & HARDWARE, | ) |
| Complainant, | ) **FINDINGS OF FACT, CONCLUSIONS OF LAW, AND DECISION** |
| v. | ) |
| ANDERSON TOWING, LLC., | ) |
| Respondent. | ) |

The undersigned members were duly appointed to the Tow Truck Complaint Resolution Committee ("Committee") to review and resolve complaints submitted to the Committee on tow truck issues, including towing charges. *See* Mont. Code Ann. § 61-8-912. On September 17, 2024, the Committee met to review and resolve the above-captioned matter.

## PROCEDURAL BACKGROUND

Kenyon Noble Lumber & Hardware ("Kenyon") is a Domestic Profit Corporation principally located at 1243 W. Oak Street, Bozeman, MT 59771. Anderson Towing, LLC (Anderson), is a Domestic Limited Liability Company, principally located at 1202 S. 32nd St. W., Suite M, Billings MT 59102 and operates multiple locations under assumed business names, registered to Anderson Towing, LLC.

On April 29, 2024, the Office of Consumer Protection ("OCP") received a complaint from Kenyon against Anderson. OCP processed the complaint in accordance

1

with Admin. R. Mont. 23.6.106 (3) and (4). Kenyon alleged that Anderson had improperly charged them for a non-consent (rotational) tow by charging more than was reasonable. Kenyon stated in their complaint that one of their delivery trucks was involved in a head-on collision which resulted in a fatality. Kenyon was not at fault for this accident and the driver of the at-fault vehicle died. Kenyon stated Anderson was called as a rotational tower to tow their vehicle on April 17, 2024. Anderson towed their vehicle to their lot, which was approximately 2 miles away. On April 24, 2024, Kenyon went to retrieve their vehicle since it had been released from law enforcement. Ultimately, Kenyon learned that the tow bill was $6,754.66 and that Anderson would only accept a cashier's check, or a company check from Kenyon. Kenyon protested the bill but ultimately paid for it and retrieved their vehicle. Kenyon complained that the tow bill was egregious, outrageous and unreasonable.

OCP forwarded a copy of Kenyon's complaint to Anderson on April 29, 2024. On May 13, 2024, Anderson responded with a written statement of the business' account of the incident. OCP forwarded Anderson's response to Kenyon on May 15, 2024. On June 6, 2024, Kenyon responded requesting their complaint be forwarded to the Tow Truck Resolution Committee ("TTRC") for a hearing. On June 7, 2024, OCP notified the parties that the complaint was forwarded to the Committee for a hearing.

On June 25, 2024, a Scheduling Order was issued by the TTRC and a hearing was set for September 17, 2024, at 9:00 a.m. The hearing proceeded as scheduled and was held in the Office of Consumer Protection conference room at 302 N. Roberts Street, Helena, Montana.

2

## HEARING

On September 17, 2024, the TTRC held a public hearing at the Office of Consumer Protection, where both sides presented evidence and testimony. Following the hearing, the TTRC met to issue a final decision based on the record and testimony before it. Sitting members present were Chair Tammy Perkins, Vice Chair David Gardner, Joanne Blyton, Joe Beatty, Jim Anderson and Shaun Peterson. Assistant Attorney General Jacob Griffith was also present. Kenyon was represented by attorney Kelsey Killion of Kasting, Kauffman & Mersen, P.C. Anderson was represented by attorney Geoff Cunningham of Parker, Heitz & Cosgrove, PLLC.

The Committee reviewed the following documents and materials in the record:

1. Kenyon's Complaint to the Office of Consumer Protection, which was part of the Administrative Record;

2. Anderson's written response, which was part of the Administrative Record;

3. The remainder of the Administrative Record, including all the correspondence between the parties and the Office of Consumer Protection.

During the hearing, the Committee heard oral testimony from the following people:

1. Jennifer Rather, human resources and safety director for Kenyon;

2. Terry Morrison, an expert witness on the towing industry in Montana; and

3. Cameron Cochran, owner of Anderson Towing, LLC and recognized as an expert witness on the towing industry in Montana.

The parties moved to admit exhibits during the hearing. The admitted exhibits include:

3

1. Kenyon's Exhibits 1 through 6:

   1. Collection of photos;

   2. Towing Invoice;

   3. Anderson's Response to OCP;

   4. Google Map;

   5. Morrison's CV;

   6. A spreadsheet and Underlying Documents prepared by Morrison.

2. Anderson's Exhibits A through G:

   A. Photo from the scene;

   B. Collection of photos;

   C. Collection of photos;

   D. Billings Towing and Recovery Invoice;

   E. Montana Hazmat Response Invoice;

   F. Invoice from Tri-State Spill Response;

   G. A photo of Kenyon's vehicle inside Anderson's storage.

Kenyon first called Jennifer Rather as a witness. Rather testified that she is employed as the human resources and safety director for Kenyon. She has been employed in that capacity for 26 years and prior to that, a police officer. Rather testified she became familiar with Anderson on April 17, 2024, the date of the accident involving Kenyon's work vehicle.

On April 17, 2024, someone called Kenyon's store to alert them that their vehicle had been in an accident right down the road from their office. Rather testified when she

4

learned this, she got into her vehicle and drove to the scene of the accident. When she approached the scene, she observed an accident between a black pickup and Kenyon's vehicle had occurred. No emergency vehicles or tow trucks had arrived yet. Rather testified she took photographs and observed fluids leaking from the black truck, located on asphalt. She also explained she observed and photographed Kenyon's vehicle. She observed debris, but no fluids coming from the vehicle.

Rather testified she learned a few days later from the Montana Highway Patrol that Anderson was the company that towed Kenyon's vehicle. She testified she went to Anderson to retrieve the vehicle. She then testified about the charges on the tow invoice. She stated Kenyon's vehicle was towed by Anderson on April 17, 2024, and released on April 25, 2024. She testified about each line item on the invoice and explained she disagreed with the amounts charged. She testified she believes the charges are egregious, outrageous and exorbitant.

Kenyon then called Terry Morrison as a witness, who was recognized by the Committee as an expert in the towing industry. He testified he reviewed materials ahead of the hearing, which included invoices from several towing businesses in the Gallatin Valley from a timeframe of 30 days prior to April 17, 2024, the accident at issue in this case and 30 days after. He also obtained invoices from Anderson locations in both Bozeman and Billings. The purpose of reviewing these materials was to form an opinion on whether the tow bill received by Kenyon was fair and equitable based on what was usual and customary for the industry.

In conducting his research, Morrison testified he compiled a spreadsheet to develop insight into what would be usual and customary for a tow substantially similar to Kenyon's tow by Anderson. First, Morrison testified about the $900 charge for a medium duty wrecker and a charge of $450 for a driver. In his opinion, when a tow truck is dispatched, you charge for a tow truck, but not a tow truck and a driver. Anderson's charges were, on average, about $937.50 above what other companies charge. Morrison testified based on his research, the average cost for a medium duty wrecker is $272.24, whereas Anderson charged $900 for the wrecker and then an additional $450 for a driver.

Next, Morrison testified about the mileage charge of $110.60. Mileage fees typically are $4-$6 per mile, and the tow distance was 2 miles each way, for a total of 4 miles. In his opinion, this charge was unreasonable for a 4-mile trip.

Next, Morrison discussed the charge of $400 for cleanup. In his opinion, this would have been a reasonable charge, except there was also a charge on the invoice for $2,524.50 for a Montana Hazmat Response. In his opinion, a hazmat response was not necessary on this tow, because the fluids spilled did not exceed 25 gallons. Additionally, there were no environmental considerations such as waterways that would require hazmat. He stated the accident scene photos depict mostly asphalt being that it was a paved highway. There were no environmental considerations present requiring hazmat. He also described observing the application of "floor dry", which absorbs the oil and antifreeze that leaked because of the accident. The liquids are turned into a solid and can be disposed of at the landfill. This practice is an everyday occurrence in the towing business and does not require a hazmat response. The trigger for a hazmat response is a

6

25-gallon fluid spill. From the accident photos, Kenyon's vehicle lost some antifreeze, but otherwise no other fluids and certainly not 25 gallons. Nothing about the photos, in his opinion, would require a hazmat response. Even if the fluid leak would, the vast majority of fluids leaked were from the Ford truck that hit Kenyon's vehicle. In his research, no other company charged a hazmat fee, but of the Anderson invoices reviewed, Anderson charged a hazmat fee 33% of the time at an average cost of $2,030.77.

Morrison then testified about the $135 labor charge. In looking at this incident, there was a lot of debris. In his opinion, $135 may have been reasonable, but based on his research, it was above average.

Morrison testified about the $500 charge for traffic control signs, cones and warning lights. In his experience, this charge is not usual and customary for this type of accident. It was hard for him to even understand what was used for traffic control in this instance as well as the other invoices of Anderson's that he reviewed. He testified that in 100% of Anderson's tow bills reviewed by him, $500 was charged every time. In his opinion, the $500 charge was not usual or customary. Only one other company charged for traffic control one time and charged $200. In addition, the vehicle used for traffic control had on the side of it "Montana Hazmat Response", and in his opinion, this was a double billing.

Morrison next testified about the gate fee. He stated that a gate fee of $125 was reasonable.

Morrison testified about the lien processing fee of $100. In his opinion, the lien process is triggered when a vehicle is not retrieved. In this instance, the vehicle was

7

retrieved in nine days so there was no reason to begin the lien process. In his review, Anderson was the only company to charge a lien fee, and it was charged 100% of the time on the Anderson invoices he reviewed.

Morrison testified that he learned in his review of the materials that the driver of the Ford F150 was at fault for the wreck, not Kenyon. In his experience, the at fault party is typically liable for the cleanup. In his opinion, Anderson improperly charged Kenyon for a hazmat response because it wasn't needed and even if it were, it wasn't Kenyon's responsibility.

Anderson called Cameron Cochran as their first and only witness. Cochran is the owner of Anderson Towing, LLC, and was recognized as an expert in the towing industry by the Committee. Cochran spoke about his ownership of multiple towing companies in multiple states as well as his certification in hazmat. In preparation for the hearing, Cochran reviewed the invoice and photographs. He also spoke with the employees involved.

Cochran testified that Anderson received a rotational call from law enforcement on April 17, 2024, at approximately 2:59 p.m. His crew completed the call at approximately 6:02 p.m. Cochran admitted there was an issue with the mileage charge because of a software glitch. He stated if Kenyon had brought it to their attention prior to filing a complaint, Anderson would have refunded the difference. There was a stipulation between the parties that the mileage discrepancy was a software glitch.

Cochran next testified about how the decision is made to call in hazmat. Cochran testified that Montana Hazmat Response is a separate company, owned by him. Because

8

of the amount of hazardous materials on scene, the decision was made to employ Montana Hazmat Response. He testified the decision was proper to call in hazmat because of the amount of fluids involved and the distance the fluids were spread. The fluids were on a roadway and could cause other vehicles to crash because they can become slippery. Additionally, when it rains the materials would float away going down storm drains and into rivers. He also uses this company that he owns because it is properly licensed and insured. Cochran also testified that the other company that towed the black Ford F150 left the and did not properly clean up the scene. In his opinion, as a tow company, Anderson had a duty to clean up the scene and restore the roadway to its prior condition. The amount charged for hazmat services were charged to Anderson from Montana Hazmat Response and then passed on to Kenyon for payment.

Cochran testified his employees provided a proper cleanup. The employees of Montana Hazmat Response arrived on scene, cleared the debris from the roadway and then started applying an absorbent to the roadway to absorb the materials. Then, they were swept up, placed in a drum with a hazmat lining and kept on their lot waiting for ultimate disposal. The amount of oil and fluids involved in this accident required hazmat. Cochran testified that anything under 25 gallons is the owner of the vehicle's responsibility to clean up. Anything over 25 gallons requires a state notification, permits and a hazmat required response.

Cochran testified he is the one in charge of setting pricing for Montana Hazmat Response. He testified about an invoice from another hazmat company located in Kentucky. He testified he reviews bills like these when setting his own pricing. In his

9

opinion, Montana Hazmat Response charges substantially less than other companies. He testified in his opinion, the bill generated by Montana Hazmat Response was reasonable and customary and in addition, it was reasonable and necessary to employ hazmat on this accident.

Cochran testified he is ultimately in charge of billing procedures and rates for Anderson. He has companies in multiple states across the country. He has reviewed billing of Montana companies and the prices they charge for towing. In his opinion, his pricing is appropriate and the invoice for Kenyon's tow was reasonable, except for the mileage discrepancy.

## **FINDINGS OF FACT**

1. On April 17, 2024, Anderson was called on rotation to tow Kenyon's vehicle.

2. Kenyon's vehicle had been involved in a fatal accident in Bozeman, MT.

3. A black Ford F150 hit Kenyon's vehicle and was at fault for the accident.

4. Montana Hazmat Response is a company owned by Cochran and was dispatched to the scene on April 17, 2024, at the request of Anderson.

5. Anderson invoiced Kenyon for $6,754.66 for the tow, which included a charge from Montana Hazmat Response.

6. Anderson charged $900 for a medium duty wrecker and then charged an additional $450 for an operator. A driver is necessary to dispatch a tow truck.

7. Other companies charge considerably less for dispatching a medium duty wrecker and do not charge a separate operator fee.

8. Anderson charged $110.60 for mileage. The total milage was 4 miles.

9. There was a software glitch that caused there to be an overcharge on the mileage fee.

10. Anderson did not, and has not, refunded the difference.

11. Anderson charged a total of $400 for a clean-up fee, which is reasonable and customary.

12. Anderson charged a $500 fee for traffic control signs, cones and warning lights. The vehicle that had the traffic control lights and signs was a vehicle belonging to Montana Hazmat Response. This $500 fee is double billing.

13. A $500 fee for traffic control signs, cones and warning lights is higher than usual and customary.

14. Anderson charged a gate fee of $125, which is reasonable.

15. Anderson charged a lien processing fee of $100, which was unreasonable given that Kenyon retrieved its vehicle within 9 days after the law enforcement hold was lifted.

16. The Montana Hazmat Response callout was unreasonable and unnecessary. The cleanup did not require this type of response and should have been handled within the $400 clean-up fee charged by Anderson.

17. The charge for hazmat in the amount of $2,524.50 was unnecessary and unreasonable. Even if it were reasonable, Montana Hazmat Response should have directed their bill to the black Ford F150, as it was the vehicle leaking fluids.

18. Anderson charged a 10% administrative fee, which is reasonable. However, because the other charges, such as hazmat were unnecessary, and other charges were unreasonable, the administrative fee is inflated, and therefore, unreasonable.

19. The invoice charged by Anderson is, overall, unreasonable and not customary. It exceeds the bounds of reason by more than double, approaching triple what would be appropriate for the services necessary to appropriately complete this tow.

## CONCLUSIONS OF LAW

1. The Committee has jurisdiction to "review and resolve complaints about tow truck issues, including towing charges." Mont. Code Ann. § 61-8-912(2).

2. After a contested hearing is held and if the committee finds a complaint to have merit, the committee may issue a warning, suspend the tow operator

from the state rotation system for six months, permanently suspend the operator from participating in the state rotation system or issue some other sanction that a majority of the committee agrees is appropriate. Admin. Rules of Mont. 23.6.106(8)(a)(b)(c)(d).

## DECISION

1. On April 17, 2024, Anderson was called on rotation to tow Kenyon's vehicle, which had been involved in an accident.

2. Kenyon retrieved their vehicle 9 days later from Anderson and was charged a total amount of $6,754.66.

3. The total amount charged is wholly unreasonable and unnecessary. Anderson utilized a separate company owned by Cochran to complete a task that was not necessary. Under the circumstances, it was not reasonable, and cleanup should have been handled by Anderson within the $400 cleanup fee that Anderson also charged.

4. Anderson charged a separate fee for a tow operator when they dispatched their medium duty wrecker. A tow operator is necessary to dispatch a tow truck. Charging an additional fee for an operator is unreasonable and inflates the charges for dispatching a tow truck considerably above what other companies charge.

5. Anderson double billed for traffic control signs, cones and warning lights because it was Montana Hazmat Response's vehicle that was providing these types of services. Additionally, based on the testimony, Anderson

13

      charges this fee 100% of the time, whereas other tow companies rarely charge this fee, and if they do, it is substantially less.

6. Anderson charged an administrative fee based on 10% of the overall tow bill. By inflating charges and charging for services that are wholly unnecessary, Anderson further unreasonably inflated its administrative fee.

7. This complaint has merit because in this instance, Anderson charged Kenyon for unnecessary services and charged unreasonable amounts for the services provided.

8. Therefore, IT IS ORDERED, that Kenyon's complaint does have merit and therefore Anderson is HEREBY SUSPENDED from participating in the state rotation system for a period of six (6) months beginning November 1, 2024, and ending April 30, 2025

9. A copy of this Decision shall be transmitted to the Montana Highway Patrol for enforcement of the suspension.

///

///

///

///

///

///

///

///

Dated this 21ˢᵗ day of October, 2024.

TOW TRUCK COMPLAINT RESOLUTION COMMITTEE:

Sgt. Tammy K Perkins

_____
Tammy Perkins, Chair

/s/ Dave Gardner
_____
Dave Gardner, Vice Chair

/s/ Joe Beatty
_____
Joe Beatty

/s/ Jim Anderson
_____
Jim Anderson

/s/ Joanne Blyton
_____
Joanne Blyton

/s/ Shaun Peterson
_____
Shaun Peterson

15

CERTIFICATE OF SERVICE

I hereby certify that I caused a true and accurate copy of the foregoing Finds of Fact, Conclusions of Law and Decision to be mailed to:

>Kelsey Killion
>Lilia Tyrell
>Kasting, Kauffman & Mersen, P.C.
>716 South 20th Ave, Suite 101
>Bozeman, MT 59718
>*(sent via Certified Mail)*
>
>Geoffrey Cunningham
>Parker, Heitz & Cosgrove, PLLC
>PO Box 7212
>Billings, MT 59103
>*(sent via Certified Mail)*

DATED: October 21st, 2024

Jacob Griffith
Assistant Attorney General