Matthew G. Monforton, Montana Bar # 5245
Monforton Law Offices, PLLC
32 Kelly Court
Bozeman, Montana 59718
Telephone: (406) 570-2949
Email: matthewmonforton@yahoo.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| ANDERSON TOWING, LLC, a Montana limited liability company, | ) ) Cause No. CV-25-37-BLG-TJC |
| Plaintiff, | ) ) **BRIEF IN SUPPORT OF** |
| v. | ) **PLAINTIFF'S MOTION FOR** ) **PRELIMINARY INJUNCTION** ) |
| RICH ST. JOHN, in both his individual capacity and his official capacity as Chief of Police for the City of Billings, | ) ) ) ) |
| Defendant. | ) ) ) |

## INTRODUCTION

Plaintiff Anderson Towing, LLC, seeks urgent relief from this Court to halt an unlawful and unconstitutional scheme orchestrated by a retired judge and enforced by the Billings Police Department (BPD). This case is about an abuse of power so blatant that it was caught on video: a former judge wielding his influence like a weapon to pressure Anderson Towing into granting him special treatment. When that failed, he exploited his connections within BPD to exact retaliation.

Without warning, notice, or any semblance of due process, BPD permanently removed Anderson Towing from its tow rotation list—a decision that amounts to a corporate death sentence. Jobs are at stake. A business built on service and integrity now teeters on the brink because of an arbitrary and unlawful action. Anderson Towing moves for a preliminary injunction to stop this injustice and restore its rightful place in the BPD rotation system.

## STATEMENT OF FACTS

**A.    <u>Anderson's Property Interest in the Billings Tow Rotation List</u>**

The Montana Legislature enacted the Montana Professional Tow Truck Act to ensure a fair, regulated system for law enforcement tow rotation lists. Mont. Code Ann. § 61-8-901, *et seq*. A tow rotation list is a system used by law enforcement to ensure, by rotating through a list of approved towing companies, a fair and efficient distribution of towing services for vehicles involved in accidents or disabled on roadways. This statute mandates an "equitable" rotation system for qualified tow truck operators, ensuring no single company is unfairly excluded. Mont. Code Ann. § 61-8-908(1). By law, officers must call the next operator on the list, absent specific statutory exceptions. Mont. Code Ann. § 61-8-908(6). Local law enforcement agencies, including BPD, must comply with these statutory provisions when administering rotation lists. Mont. Code Ann. § 61-8-908(9).

Complaints regarding the rotation system "must be referred in writing to the complaint resolution committee established in 61-8-912." Mont. Code Ann. § 61-8-908(11). Members of the Tow Truck Complaint Resolution Committee ("Tow Truck Committee") are appointed by the Attorney General and the Montana Department of Transportation (MDT) is tasked with promulgating rules governing the Tow Truck Committee's complaint resolution procedures. Mont. Code Ann. § 61-8-912. MDT has enacted several safeguards to protect the due process rights of tow truck companies subject to complaints brought before the Tow Truck Committee. *See* Mont. Admin. R. 23.6.106.

Anderson Towing has been on the MHP and BPD tow rotation lists since 2018 and is fully compliant with all statutory requirements. Doc. 3 (Lehm Declaration), ¶ 8. Yet, on October 21, 2024, the Tow Truck Committee suspended Anderson Towing from the MHP rotation list for six months (effective from November 1, 2024, through April 30, 2025) over a disputed price gouging allegation in Gallatin County. Doc. 1-1 at 16; Doc. 3 (Lehm Declaration), ¶ 9. Anderson Towing vehemently denies this allegation. *Id.* ¶ 11.

On October 22, 2024, MHP Sergeant Tammy Perkins, the chair of the Tow Truck Committee, notified MHP troopers statewide of Anderson Towing's suspension. Doc. 1-1. In that same notice, Sergeant Perkins stated "If the local

rotation takes [Anderson Towing] off as they see fit, that is their choice and

determination to make at the local level, per legal advice." Doc. 1-1 at 1.

Defendant Rich St. John, the Chief of BPD, suspended Anderson Towing

from BPD's local rotation list for two weeks beginning November 1, 2024, and

bypassed the company for rotation calls during that period. Doc. 3 (Lehm

Declaration), ¶ 13. Anderson Towing was reinstated on BPD's rotation list on

November 14, 2024. *Id.*, ¶ 14.

**B.** **Anderson Towing's Suspension from the Billings Towing Rotation List Without Notice or a Hearing**

On February 10, 2025, Judge Russ Fagg arrived at Anderson Towing to

retrieve his father's Mercedes that had been towed two days earlier in response to a

BPD rotation call. Doc. 1, ¶ 25. Anderson Towing's employee, Denise Jett,

informed him that the company accepted only cash or cashier's checks. Doc. 1, ¶

26. Rather than accept this standard policy, Judge Fagg responded with vulgarity:

| | |
|---|---|
| Ms. Jett: | I have to have cash or a cashier's check only from the bank. They will not accept anything else. |
| Judge Fagg: | That's kinda bullshit that you didn't tell me that half an hour ago. |
| Ms. Jett: | Sir, I didn't speak to you. So please don't cuss at me. . . |
| Judge Fagg: | Well. . . |

| Ms. Jett: | . . . Please do not cuss at me. . . . |
|---|---|
| Judge Fagg: | Tell the guy who answers the phone. I told him I'm coming up… |
| Ms. Jett: | …You don't need to be rude to me… |
| Judge Fagg: | …You're gonna need. . . |
| Ms. Jett: | …."Excuse me, I can ask you to leave…. |
| Judge Fagg: | ….I have a credit card and a check…. |

Doc. 1, ¶ 26.

As Judge Fagg continued insisting on using a credit card or personal check, a visibly shaken Ms. Jett asked Bryce Saunders, Anderson Towing's general manager, to intervene. Doc. 1, ¶ 28. Mr. Saunders explained to Judge Fagg that the company accepted only cash or cashier's checks because it had "been burned so many times" when accepting credit cards or personal checks and that this policy was designed to protect the company. Doc. 1, ¶ 29.

Another Anderson Towing employee informed Judge Fagg that the registration in the Mercedes was expired, prompting him to admit that the vehicle was registered to his father in Arizona and had likely not been renewed. Doc. 1, ¶ 31. Judge Fagg agreed to pay Anderson Towing a $100 fee to retrieve an updated registration directly from the Montana Motor Vehicle Department (MVD). Doc. 1, ¶ 34. Moments later, Ms. Jett presented Judge Fagg with the bill and informed him

that the $100 charge for the MVD report was listed as a "Lien Processing Fee." Doc. 1, ¶ 34.

Judge Fagg spoke with the wife of the owner of Anderson Towing in an attempt to use a credit card or personal check for payment: " I hate to play this card – I was a district court judge for 22 years. I'm a lawyer in this town. There's no damn way I'm going skip out on the bill." Doc. 1, ¶ 37. Anderson Towing stood firm, declining to make an exception. *Id.*, ¶ 39.

On February 11, 2025, Judge Fagg filed a complaint against Anderson Towing with the Montana Office of Consumer Protection in Helena. Doc. 1-2. Judge Fagg's complaint did not mention his credit card and personal check being rejected. Instead, he complained solely about the charges. Doc. 1-2.

On February 12, 2025, Judge Fagg sent a letter to the City of Billings demanding Anderson Towing's removal from BPD's rotation list. Doc. 1-3. Although Anderson Towing quickly identified and attempted to refund a $500 traffic control charge made in error, Judge Fagg refused the offer. Doc. 4 (Saunders Declaration), ¶¶ 8-9.

In a letter dated February 25, 2025, BPD Chief Rich St. John informed Anderson Towing that it had been "permanently removed from the Billings local tow truck rotation system." Doc. 1-4. The letter primarily referenced the Tow Truck Committee's earlier order concerning the incident in Gallatin County even

though BPD had already suspended Anderson Towing for that incident between November 1 and November 14, 2024, and subsequently reinstated the company. Doc. 1-4. The letter also vaguely referenced "informal complaints" about Anderson Towing following local rotation calls but did not provide any details or documentation regarding these complaints. Doc. 1-4.

Defendant's letter also referenced an invoice from Anderson Towing related to Call #53354, the tow provided for the Mercedes on February 8, 2025, at the intersection of 6th Avenue North and North 27th Street. Doc. 1-4; Doc. 3 (Lehm Declaration) at ¶ 18. The invoice that Judge Fagg paid was derived from this same invoice marked as "Call #53354." Doc. 1-4; Doc. 3 (Lehm Declaration) at ¶ 18.

Defendant took issue with the $100 lien processing fee and the $500 traffic control fee listed on the invoice. Doc. 1-4. He concluded his letter by declaring that "Anderson Towing is removed from the Billings local rotation system, effective the date of this letter.... This decision is permanent and will not be reconsidered for the reasons stated above. . . ." Doc. 1-4.

Judge Fagg has deep connections with BPD's leadership. BPD's assistant police chief and at least one other officer participated in annual horseback hunting trips with Judge Fagg. Doc. 5 (Feuerstein Declaration), ¶ 5-8.

Anderson Towing received no notice, no opportunity to respond, and no hearing before being erased from the rotation list. Doc. 3 (Lehm Declaration), ¶

18. The consequences have been catastrophic. Anderson Towing derived 15% of its revenue—approximately $52,000 monthly—from BPD rotation calls. *Id.*, ¶ 22. These losses are having ripple effects, as customers introduced through rotation calls often return for future service. *Id.*, ¶ 23. Rotation calls that would have been assigned to Anderson Towing are now being directed to its competitors. *Id.*, ¶ 24. The company now faces layoffs and, if not reinstated, may be forced out of business altogether. *Id.*, ¶ 25.

## ARGUMENT

Plaintiffs who seek a preliminary injunction must show that: (1) they are likely to succeed on the merits (2) they are likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in their favor, and (4) an injunction is in the public interest. *Baird v. Bonta,* 81 F.4th 1036, 1040 (9th Cir. 2023), citing *Winter v Natural Res. Def. Council*, 555 U.S. 7, 20 (2008). Because the government is the non-moving party in this case, the last two *Winter* factors merge. *Id.*

## I. ANDERSON TOWING IS LIKELY TO SUCCEED ON THE MERITS

Anderson Towing is highly likely to prevail on its due process claim because it was permanently removed from BPD's rotation list without *any* notice or an opportunity to be heard—both fundamental requirements under the Fourteenth

Amendment. The Due Process Clause prohibits state actors from depriving

individuals or businesses of protected property or liberty interests without due

process of law. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). A procedural due

process claim under the Fourteenth Amendment has two elements: (1) a

deprivation of a constitutionally protected liberty or property interest and (2) a

denial of adequate procedural protections. *Brewster v. Bd. of Educ. of Lynwood*

*Unified Sch. Dist.,* 149 F.3d 971, 982 (9th Cir. 1998).

A protected property interest exists where state law or official policy secures

benefits and creates a legitimate claim of entitlement. *Bd. of Regents v. Roth*, 408

U.S. 564, 577 (1972). The inclusion of a tow operator on a statutorily established

rotation list constitutes such a protected property interest. *Pritchett v. Alford*, 973

F.2d 307, 318 (4th Cir. 1992) ("the specific constitutional right asserted by [the

plaintiffs] not to be removed summarily from the wrecker list was a clearly

established right of which any reasonably competent official in Alford's position

would have known."); *Abercrombie v. City of Catoosa*, 896 F.2d 1228, 1232 (10th

Cir. 1990) (finding a property interest where state statute mandated a rotation list

and required equal referral opportunities). Once granted, this interest cannot be

revoked without procedural due process—specifically, prior notice and a

meaningful opportunity to be heard. *Boddie v. Connecticut*, 401 U.S. 371, 378-79

(1971) ("root requirement" of due process is that "an individual be given an

opportunity for a hearing *before* he is deprived of any significant property interest."); *Guenther v. Comm'r*, 889 F.2d 882, 884 (9th Cir. 1989) ("Notice and an opportunity to be heard are the hallmarks of procedural due process").

Montana law expressly recognizes tow rotation systems administered by local law enforcement. Mont. Code Ann. § 61-8-908(9). BPD itself acknowledges this statutory framework. Doc. 1-4 at 3 ("The Billings Police Department adopted a local law enforcement rotation system in the City of Billings. Mont. Code Ann. § 61-8-908(9).").

Qualified tow truck operators who, like Anderson Towing, have been placed on Montana's statutorily created rotation lists have a property interest in remaining on them. For Anderson Towing, this is not simply an abstract right. Inclusion on BPD's rotation list provides a reliable stream of $52,000 in monthly revenues, accounting for 15% of the company's business. Doc. 3 (Lehm Declaration), ¶ 22.

Yet, Anderson Towing was permanently removed from BPD's tow rotation without prior notice or an opportunity to challenge the decision. Doc. 3 (Lehm Decl.), ¶ 19. The February 25, 2025, letter from Defendant declared this removal "permanent and will not be reconsidered," citing only vague "informal complaints" and referencing a prior, already-resolved suspension. Doc. 1-4. Despite the severity of a permanent ban, BPD provided no hearing, no opportunity to respond to allegations, and no chance to present evidence.

Had Anderson Towing been afforded due process, it would have demonstrated through testimony and documentary evidence that the alleged infractions were either erroneous or justified:

- Testimony from General Manager Bryce Saunders confirming that he identified and attempted to refund the erroneous $500 traffic control fee, Doc. 4 (Saunders Declaration), ¶ 8;

- Testimony from Denise Jett (supported by video evidence) confirming that the $100 lien processing fee was properly assessed for a valid MVD report due to expired registration and ownership discrepancies – charges that the vehicle owner had agreed to pay, Doc. 1, ¶ 35;

- Testimony from Rob Lehm, a retired law enforcement officer and Anderson Towing's compliance manager, confirming that the remaining charges resulted from standard industry practices. Doc. 3 (Lehm Declaration), ¶ 20;

Defendant's arbitrary and unilateral removal of Anderson Towing—without notice, hearing, or recourse—violates the most basic tenets of due process. Anderson Towing is, therefore, likely to succeed on the merits. Anderson Towing is, therefore, likely to succeed on the merits.

## II.  ANDERSON TOWING WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF IMMEDIATE INJUNCTIVE RELIEF

As demonstrated in the preceding section, Anderson Towing is likely to succeed on the merits of its constitutional claim. A showing of likely success on the merits of a constitutional claim "will almost always demonstrate [the plaintiff] is suffering irreparable harm as well." *Baird*, 81 F.4th at 1042; *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017) (finding of irreparable harm "follows

inexorably" from a "conclusion that the government's current policies are likely unconstitutional").

Irreparable harm also arises from a "rule putting plaintiffs at a competitive disadvantage." *International Franchise Ass'n, Inc. v. City of Seattle*, 803 F.3d 389, 411 (9th Cir. 2015). In that case, the court held that a municipal ordinance requiring large employers and their franchisees to pay a higher minimum wage inflicted a "competitive injury" by increasing labor costs and reducing wage flexibility. *Id.*

Here, Defendant's removal of Anderson Towing from the rotation list for the largest city in Montana has created a significant competitive disadvantage. Anderson Towing derives 15% of its business from participation in BPD's tow rotation list, generating approximately $52,000 in monthly revenue. Doc. 3 (Lehm Decl.) ¶ 22. Defendant has deprived Anderson Towing of those revenues for over a month.

Anderson Towing's losses are its competitors' gains. This is not a case where government action merely reduces revenues by imposing regulatory costs. Participation in a tow rotation list is a zero-sum system: each time BPD bypasses Anderson Towing in favor of a competitor, it distorts the competitive landscape, depriving Anderson Towing of business opportunities while strengthening its

rivals. This exclusion not only impacts current revenues but also diminishes Anderson Towing's ability to build goodwill and maintain its market position.

Moreover, the harm extends beyond immediate financial losses. Customers referred to Anderson Towing through the tow rotation list frequently return for future towing services. *See* Doc. 3 (Lehm Decl.) ¶ 23. The present exclusion, therefore, results in lost long-term business opportunities and customer relationships.

Defendant is inflicting an ongoing constitutional injury on Anderson Towing, causing both immediate and long-term damage to its competitive standing and customer base. Anderson Towing has thus demonstrated a clear likelihood of irreparable harm absent immediate injunctive relief from this Court.

## III. THE BALANCE OF EQUITIES AND PUBLIC INTEREST TIP SHARPLY IN ANDERSON TOWING'S FAVOR

Because this case involves a government actor as the defendant, the third *Winter* factor – balance of equities – merges with the fourth factor, public interest. *Baird,* 81 F.4th at 1040; *East Bay Sanctuary Covenant v. Barr*, 964 F.3d 832, 845 (9th Cir 2020). These merged factors weigh heavily in Anderson Towing's favor, as courts consistently recognize that the public interest is best served by "prevent[ing] the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012).

The harm being inflicted daily on Anderson Towing by Defendant is severe and irreparable. The removal from BPD's rotation list has stripped the company of a critical revenue stream, jeopardizing its financial stability and threatening employee livelihoods. Doc. 3 (Lehm Declaration), ¶¶ 21-25. This exclusion, imposed without due process, creates an existential crisis for the business. *Id.*, ¶ 25, making injunctive relief necessary to prevent additional harm.

By contrast, Defendant faces no comparable harm if an injunction is granted. Reinstating Anderson Towing to the rotation list merely restores the status quo and ensures fair competition among towing providers. Defendant would suffer no tangible harm from maintaining a lawful and non-discriminatory rotation system, as he is already required to administer it in compliance with legal and constitutional standards.

Further strengthening the case for a preliminary injunction is the public's interest in "maintain[ing] an *equitable* rotation system among qualified tow truck operators..." Mont. Code Ann. § 61-8-908(1) (emphasis added). The Montana Legislature enacted the Montana Professional Tow Truck Act to prevent *exactly* what Defendant has done: manipulating towing referrals based on favoritism, personal connections, or retaliation.

Upholding due process and preventing government officials from wielding their power arbitrarily is a fundamental public concern. Left unchecked, the

14

conduct at issue—where a former judge and BPD officials leveraged their influence to retaliate against a private business—undermines public trust in law enforcement and government institutions. The public has a vested interest in ensuring that government action is transparent, fair, and free from retaliation or favoritism.  Issuing a preliminary injunction will ensure that towing services in Billings are allocated based on due process, not politics.

For these reasons, the balance of harms and the public interest both weigh decisively in favor of granting Anderson Towing's motion for a preliminary injunction. The Court should therefore order Anderson Towing's immediate reinstatement to the BPD rotation list while this litigation proceeds.

## IV.   ANDERSON TOWING SHOULD NOT BE REQUIRED TO POST AN INJUNCTION BOND

Though the text of Fed. R. Civ. P. 65(c) suggests that a bond is necessary whenever a preliminary injunction is issued, the Ninth Circuit has held that the rule "invests the district court with discretion as to the amount of security required, *if any.*" *Johnson v. Courturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (emphasis added).  A court may waive the bond requirement in Rule 65(c) "when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id.*

As stated previously, Defendant suffers no tangible harm from maintaining a lawful and non-discriminatory rotation system. Even if a preliminary injunction is later dissolved and Anderson Towing does not prevail at trial, Defendant will not have sustained any costs for which a bond would provide security. The Court should, therefore, waive a bond requirement for Anderson Towing.

## CONCLUSION

For all of the foregoing reasons, Plaintiff Anderson Towing respectfully requests that this Court grant its motion for a preliminary injunction and enjoin Defendant from bypassing Anderson Towing when utilizing its towing rotation list.


DATED: April 2, 2025

Respectfully submitted,

/s/ Matthew G. Monforton

Matthew G. Monforton
Monforton Law Offices, PLLC
32 Kelly Court
Bozeman, Montana 59718

Attorneys for Plaintiff

## CERTIFICATE OF COMPLIANCE PURSUANT TO L. R. 7.1(d)(2)(E)

I hereby certify that this document, excluding caption, tables and certificate of compliance, contains 3245 words, as determined by the word processing software used to prepare this document, specifically Microsoft Word 2007.

DATED: April 2, 2025

Respectfully submitted,

/s/ Matthew G. Monforton

Matthew G. Monforton
Monforton Law Offices, PLLC
32 Kelly Court
Bozeman, Montana 59718

Attorneys for Plaintiff